# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| JOSE ANGEL GARCIA | § | |
| | § | |
| v. | § | SA-08-CV-430-XR |
| | § | |
| CITY OF KIRBY and MICHAEL ALONZO | § | |

## ORDER

On this day came on to be considered Defendants' motion for summary judgment (docket no. 24).

## BACKGROUND

In his Original Complaint, Garcia asserts claims under section 1983. Specifically, "Plaintiff contends that his arrest on November 27, 2007, was motivated by racial discrimination and excess use of force was employed at the time of the arrest." Additionally, "Plaintiff contends that the City of Kirby discriminated against him in the enforcement of a city ordinance concerning shrub height." Garcia alleges that, beginning in April 2006, Code Enforcement personnel for the City began contacting Plaintiff concerning the height of his seventeen-year-old pine trees on his property. Garcia felt that he was being unfairly singled out for enforcement due to his race and in retaliation for his previous complaints concerning the selective enforcement of the ordinance.

Plaintiff further alleges that, "On November 27, 2007, while Plaintiff

Garcia and a customer were test driving a vehicle, they were accosted by several Kirby police officers." Garcia alleges that, although he had committed no illegal act, he was pulled over by Kirby police officers at gun point, ordered to lie on the ground, and was handcuffed for approximately fifteen minutes.  Plaintiff states that he is a "known business person" in Kirby and that he was known to the officers in question, but Defendant Alonzo nevertheless used excessive force and began handcuffing and pointing a gun at Garcia.  "Plaintiff contends that his arrest was motivated due to the fact of his race."  Plaintiff also alleges that Officer Alonzo retaliated against him because Plaintiff previously complained to the City Manager and Chief of Police about Alonzo.

Plaintiff's sole claim against the City of Kirby stems from his allegation that the City was discriminatorily enforcing the tree/shrub ordinance against him because of his race.

## Defendants' Motion

Defendants argue that on November 27, 2007, a report was made that eight Hispanic males were kicking a person in the head at 5200 FM 78 in Kirby, Texas.  An emergency dispatch message was sent and Officer Alonzo responded to the area.  As he arrived to the area, Officer Alonzo received a second message from the dispatcher notifying him that a green minivan was leaving the scene with the suspected actors inside the vehicle. Officer Alonzo saw a green minivan nearby, stopped the vehicle, and requested officer assistance.  Thereafter, he ordered the driver (a customer of Plaintiff's used car sales business) out of the vehicle and handcuffed him.  The passenger (Plaintiff Jose Angel Garcia) was

2

also ordered out of the vehicle and handcuffed. Both men were detained for approximately 19 minutes[1] and then released after it became apparent that neither gentlemen was involved in the assault incident.

Defendant Alonzo seeks summary judgment arguing that the *Terry* stop of the green minivan, drawing of his weapon, and temporary detention of the Plaintiff was not unreasonable as a matter of law.

Defendant City seeks summary judgment arguing that Plaintiff has failed to establish any "custom or practice" of the City which was the moving force behind Plaintiff's injury. The City further argues that no respondeat superior liability attaches under section 1983.[2]

With regard to the allegation that the City selectively enforced it's tree/shrub ordinance against Plaintiff, the City argues that the Plaintiff was given this citation on April 17, 2006, that he admits his property was in violation of the ordinance, and that Plaintiff voluntarily complied with the ordinance on May 4, 2006. The City further argues that Plaintiff's claim is barred by the two year statute of limitations. In the alternative, the City argues that Plaintiff presents no evidence that his national origin (Nicaraguan) played any role in his being cited for a violation of the ordinance.

---

[1] Defendants have provided the Court in their motion for summary judgment an audiotape of the police dispatcher's conversations with the citizen who called in the assault incident. The Defendants have also provided the Court with a videotape of Officer Alonzo's stop of the green minivan. The videotape, however, does not have any audio component, so the Court is unable to determine what was said between Officer Alonzo and the driver or Plaintiff.

[2] The Court notes that Plaintiff has never alleged a "custom or practice" claim against the City.

**Analysis**

**A.  City's discriminatory enforcement of tree/shrub ordinance claim**

As stated above, Plaintiff claims that on April 17, 2006, he was cited for having trees that violated the City ordinance.[3] Plaintiff admits in his deposition that the trees exceeded the allowable limit.[4] Both parties address in discovery other citations that have been issued to the Plaintiff; however, they are not the subject of any claim pled in the latest Complaint.[5]

Plaintiff argues that in his opinion other residents in Kirby have also violated the ordinance. Plaintiff attaches pictures that he allegedly has taken wherein someone is seen measuring the height of various shrubbery. In addition, Plaintiff attaches a letter he sent to the code compliance officer on April 19, wherein he identifies various locations he believes are also out of compliance. Although Plaintiff presents his subjective belief that the City ordinance has been applied unevenly, Plaintiff presents no competent summary judgment evidence that the City selectively enforced the ordinance against him because of his race/national origin or in retaliation for any previous complaints he has raised. Indeed, the City Manager testified that the City has only one code

---

[3] A copy of the citation is attached to Plaintiff's Response (docket no. 25) as Exhibit E.

[4] Plaintiff's Deposition at p. 26.

[5] Plaintiff attaches a July 18, 2006 notice of violation wherein he is warned to cut limbs and brush at 102 Mac Rac. In addition, Plaintiff attaches an August 25, 2006 notice of violation wherein he is warned that he needs to immediately remove brush so that the water meter can be read at 403 Edalyn.

enforcement officer; the City tries "to make sure that everybody adheres to the rules and regulations"; Plaintiff has been given variances from the code on occasions; and in 2005 the City appointed Plaintiff to the Buildings and Standards Commission. "Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997). Accordingly, the City's motion for summary judgment on Plaintiff's claims against it is granted.[6]

**B.    Plaintiff's seizure and excessive force claims**

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity occurred, or is about to occur, before stopping the vehicle. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the seizure. *Id.*

In this case Officer Alonzo had a reasonable suspicion that allowed him to stop the green minivan. He had received a report from the dispatcher that suspects in an assault had left the scene in such a vehicle. He saw the green minivan in the same vicinity as the assault.

Since police officers should not be required to take unnecessary risks in

---

[6] In the alternative, Plaintiff's claim against the City is barred by limitations. Plaintiff was given the citation on April 17, 2006. He filed his lawsuit on May 27, 2008. *See Banks v. F.D.I.C.*, 2010 WL 1141677 (5th Cir. 2010).

5

performing their duties, they are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry ] stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). A brief but complete restriction of liberty is valid under *Terry*. *United States v. Elston*, 479 F.3d 314, 418 (4th Cir. 2007). In this case Officer Alonzo questioned the driver and Plaintiff whether they were involved in the assault, requested identification cards, and detained Plaintiff for no more than 19 minutes.

"[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). A Fourth Amendment excessive force claim exists if a plaintiff shows [he] (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Casper v. City of Lago Vista*, 177 F.3d 977, *3 (5th Cir. 1999). In deciding whether the amount of force used was constitutionally excessive, the Court must apply an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394-96 (1989). Under that standard, the Court must evaluate the facts and circumstances surrounding the use of force, "including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or

6

others, and whether he ... actively resist[ed] arrest or attempt[ed] to evade by flight." *Id.* In performing such an evaluation, the Court must be mindful that "officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary." *Graham*, 490 U.S. at 397.

In hindsight one can second guess Officer Alonzo's decision to brandish his handgun when ordering the driver and Plaintiff from the green minivan. The reasonableness of Alonzo's conduct, however, must be measured in light of the limited information on which he reasonably relied. At the moment he stopped the green minivan he had been told by the dispatcher that eight men were assaulting another person by kicking the victim in the head. He received an E-tone from the dispatcher, a call indicating a severe situation and the possibility of a life-threatening situation. Just as he arrived at the scene, the dispatcher told him that the suspects were seen leaving in a green minivan. At that moment he sees a green minivan and pulls it over. He is reasonably expecting to see as many as eight individuals in the vehicle who are alleged to have committed a violent assault. The Court's review of the police vehicle videotape clearly indicates that Officer Alonzo did not draw his weapon until after he had handcuffed the driver and the driver was lying face down on the road.[7] At that point Officer Alonzo drew his weapon and looked inside the green minivan.[8] All

---

[7] The Court is unable to determine whether Officer Alonzo had previously drawn his weapon while the driver and Plaintiff were still inside their vehicle.

[8] A review of the videotape and Officer Alonzo's deposition testimony indicates that another officer (not Alonzo) actually handcuffed Plaintiff.

7

this is consistent with Alonzo's expectation that other suspects were inside the vehicle. While in hindsight the Court acknowledges that the means used by Alonzo were more intrusive than necessary, a reasonable officer in his shoes could certainly believe that his actions- ordering the driver out of the vehicle and to lie on the ground, unholstering his firearm as he approached the minivan and then immediately holstering the weapon, without firing his weapon or physically injuring the driver or Plaintiff in any way-were not violative of the Plaintiff's constitutional rights. *See e.g. Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008) (Plaintiffs claimed that police officer used excessive force when he ordered them to the ground at gunpoint and held them there despite their unsuspicious, nonthreatening behavior. The Court held that the police officer was nonetheless entitled to qualified immunity.); *Flowers v. Fiore*, 359 F.3d 24 (1st Cir. 2004) ("Fiore unholstered his firearm and handcuffed Flowers to ensure his safety and in order to conduct the stop and search without incident. We also agree with the district court that Silvestri and Garafola were reasonable in their momentary display of firearms during the detention, as they justifiably relied on Fiore's initial alert that Flowers may have been one of the armed individuals reported by Gaccione and did so for the limited purpose of protecting themselves and securing Flowers safely."); *Bagley v. Boyte*, 94 F.3d 641 (4th Cir. 1996) ("We recognize that it must have been extremely frightening for Bagley to have a police officer draw a weapon on him, order him to the ground, and handcuff him. It must also have been embarrassing for these events to transpire in broad daylight in front of many spectators. Nevertheless, we cannot conclude that

8

Deputy Boyte acted unreasonably in taking these precautionary steps to protect his safety during the investigatory stop of Talbert's vehicle. We therefore conclude that Deputy Boyte's actions did not amount to an excessive show of force."). *See also U.S. v. Sanders*, 994 F.2d 200 (5th Cir. 1993).[9] Alonzo's motion for summary judgment on these claims is granted.

### C.   Remaining Claim

Defendant Alonzo has not sought summary judgment on Plaintiff's remaining claim that Alonzo retaliated against him because Plaintiff lodged a complaint against Alonzo with the City Manager and Chief of Police.

Plaintiff alleges that several months prior to the November 2007 incident he was attempting to resolve an outstanding warrant regarding his brother. Plaintiff alleges that Alonzo made a statement to the effect that "his brother knows we will arrest him and that's why he sent [Plaintiff]." Plaintiff alleges that Alonzo was attempting to intimidate him and he resented the allegations being insinuated against his brother.

As stated above, Defendant has not sought summary judgment on this claim. It appears uncontested, however, that at the time Officer Alonzo stopped the green minivan, Officer Alonzo was not aware that Plaintiff was a passenger in the vehicle. Officer Alonzo only became aware of Plaintiff's presence after

---

[9] This Court recognizes, however, that the investigatory stop in *Sanders* was based on a complaint that a suspicious person with a gun was on the premises of that business.

Plaintiff exited the vehicle. Plaintiff provides only his subjective belief that he was detained for 19 minutes because of his earlier complaints to the Chief of Police and City Manager. Plaintiff provides no evidence that Officer Alonzo was even made aware of those verbal complaints.

In light of the above, the Court intends to proceed sua sponte as if a motion for summary judgment had been filed on Plaintiff's retaliation claim against Officer Alonzo. Plaintiff is hereby advised that it should file a response within twenty days of this Order with all of its evidence in opposition to summary judgment on this claim. *See Love v. Nat'l Med. Enters.*, 230 F. 3d 765, 770-71 (5th Cir. 2000).

If Plaintiff wishes to dismiss this last claim, Plaintiff should inform the Court within ten days of this Order so that a Final Judgment may issue.

The Scheduling Order dated August 11, 2009 is vacated.

## Conclusion

Defendants' motion for summary judgment (docket no. 24) is GRANTED. However, as there remains one claim outstanding, the Clerk is instructed not to close this matter.

It is so ORDERED.

SIGNED this 30th day of March, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE